Samuel H. Hofstadter, J.
This article 78 proceeding involves respondent’s denial of the application to restore petitioner’s driver’s license, theretofore revoked following a hearing before a Motor Vehicle Bureau Referee, under subdivision 3 of section 71 of the Vehicle and Traffic Law. Respondent tests the sufficiency of the petition by cross motion to dismiss.
*539 Petitioner’s record is a sorry one. Between July, 1954 and April, 1956 he committed six traffic violations:
July, 1954 — Speeding 50 miles an hour in Queens.
August, 1955 — Failing to keep to the right in Brooklyn.
October, 1955 — Passing a red light in Manhattan.
Between October, 1955, and April, 1956 — Passing a red light in Bronxville.
April, 1956 — Failing to keep to the right in Queens.
April, 1956 — Speeding in Queens.
In addition:
In July, 1956 he failed to appear at a hearing scheduled to determine whether his license should be suspended or revoked;
When his license was suspended, he surrendered only one half of his 1955 driver’s license;
In October, 1957, although his 1955 license was not due to expire until May, 1958, he applied for a new license; in answer to the question on the application whether a license issued to him had ever been suspended or revoked, he answered “ No ”; in answer to the question whether he had ever been found guilty of any offense or forfeited bail, he again answered “ No ”; and obtained a new license in part founded on these inaccurate answers; and
At the hearing held January 22, 1958 to revoke both licenses, he contended that he had lost the new license.
Upon this aggravated record, the Referee1 recommended that the licenses be revoked and that no application for restoration be considered for a period of five years. The order of revocation followed. Petitioner’s reckless record amply sustained respondent’s order of revocation and the stricture of the Referee that, if petitioner was found using the license claimed lost, “ you’ll go to jail because the Commissioner is going to prosecute you.”
In April, 1958 petitioner applied to respondent for rehearing and review of the order of revocation. On April 16, 1958 the application was denied. Neither decision may be reviewed in this proceeding, brought more than a year and a half thereafter (Matter of Nelson v. Kelly, 4 A D 2d 596; Matter of Petrzala v. Fletcher, 199 Misc. 688).
In January, 1959 petitioner applied to respondent for restoration of his license or, in the alternative, for the issuance of a new license; and in August, 1959, at the suggestion of a representative of the bureau, submitted an application for the new license in due form. On September 3,1959 both applications *540 were ‘ ‘ Denied in view of record. Will consider 9/6/61”. Petitioner thereupon brought this proceeding, by petition and notice dated December 22, 1959, served December 31, 1959, to review the order of September 3, 1959.
The petitioner’s contention that the 6-month and 30-day provisions in subdivision 5 of section 71 of the Vehicle and Traffic Law imply maximum revocation periods, absent facts other than those on which the revocation is based, is without substance. The statute imposes no such strait jacket upon the Commissioner. In the light of its history and purpose, the time periods constitute minimum, not maximum, periods during which a revoked license must lie fallow. Nor must the Commissioner disregard petitioner’s conduct prior to revocation, when passing on his application for a new license. To the contrary, his discretion is as broad as the salutary purposes of the statute require.
Subdivision 4 of section 71 of the Vehicle and Traffic Law directs that a ‘ ‘ license or certificate of registration may be restored by direction of the commissioner but not otherwise ”. Subdivision 5 provides that (a) where revocation is mandatory, no new license shall be issued for at least 6 months after such revocation, “nor thereafter, except in the discretion of the commissioner”, and (b) where revocation is permissive, no new license shall be issued until after 30 days from the date of revocation, 1 ‘ nor thereafter, except in the discretion of the commissioner after an investigation or upon a hearing.” The Legislature thereby has made clear in unmistakable, indeed emphatic, 'language its intent that a license once revoked may not automatically be regained; and may be restored only by, and in the discretion of, the Commissioner.
No doubt of this intent can survive the sentence in subdivision 6 that “ Revocation or suspension hereunder shall be deemed an administrative act reviewable by the supreme court as such.” The section may be searched in vain for a similar directive pertaining to restoration of a license.
Restoration, then, is in the discretion of the Commissioner — and the court may not substitute its views for his (cf. Matter of Weiss v. Macduff, 207 Misc. 763; Matter of Renkowski v. Macduff, 140 N. Y. S. 2d 782, affd. 285 App. Div. 1152; Matter of Schayes v. Macduff, 133 N. Y. S. 2d 478, 489). Yet “ discretion ” is not synonymous to the “ free will ” or “ pleasure ” of the Commissioner (Matter of Perpente v. Moss, 293 N. Y. 325; Matter of Nelson v. Kelly, supra, p. 599; Matter of Herkel v. Kelly, 14 Misc 2d 966; Matter of Blackburn v. Macduff, 206 Misc. 393).
*541 Early in this era of the automobile we were admonished by the Court of Appeals that: ‘ ‘ The legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the state. * * * Doubtless the legislature could not prevent citizens from using the highways in the ordinary manner, nor would the mere fact that the machine used for the movement of persons or things along the highway was novel justify its exclusion. But the right to use the highway by any person must be exercised in a mode consistent with the equal rights of others to use the highway. That the motor vehicle * * * creates, unless managed by careful and competent operators, a most serious danger, both to other travelers on the highway and to the occupants of the vehicles themselves, is too clearly a matter of common knowledge to justify discussion. The fatalities caused by them are so numerous as to permit the legislature, if it deemed it wise, to wholly forbid their use. Otis v. Parker, 187 U. S. 606; People v. Persce, 204 N. Y. 397.” (People v. Rosenheimer, 209 N. Y. 115, 120-121 [1913].)
On the other hand, a license to operate an automobile is of great value to the individual; and 11 However much we may recognize the need for the rightful exercise by the commissioner of his duties in his laudable effort to prevent unsafe driving on the highways, it would be a dangerous step indeed if we permitted him to follow any loose practice formulated by him, regardless of the law”. (Matter of Wignall v. Fletcher, 303 N. Y. 435, 441; see, also, Matter of Moore v. Macduff, 309 N. Y. 35, 38.)
To be lawful, then, discretion must be rationally exercised on the basis of facts established by investigation, reports, testimony and exhibits — it may not be arbitrary or capricious (Matter of Fink v. Cole, 1 N Y 2d 48). And where, as here, the revocation was “ permissive ”, the statute requires such discretion to be exercised 11 after an investigation or upon a hearing.” (Cf. Matter of Johnson v. Kelly, 2 A D 2d 213; Matter of Fink v. Cole, supra.)
To paraphrase Judge Burke’s language in Fink (supra, p. 53), the Commissioner may refuse restoration if he finds the existence of a factual situation calling for such refusal. If there is reasonable ground for such refusal, the denial may not be set aside by the courts. The test on judicial review is whether Ms action was without reasonable basis (see, also, Matter of Bernola v. Fletcher, 280 App. Div. 870; Matter of Ryan v. Macduff, 286 App. Div. 1135, motion for leave to appeal denied, 309 N. Y. 1024).
*542 The ‘ ‘ limits of reasonable discretion are transgressed where refusal is based upon a ground which under the statute the licensing officer may not consider or upon a ground which is not supported by any evidence. * * * Arbitrary refusal of a license in such case to a fit and proper applicant is a wrong to him; and ‘ he has a remedy through mandamus to right the wrong which he has suffered.’ * * * Whether or not an applicant has a clear legal right to a license depends, then, upon the question whether a refusal would be arbitrary or capricious or whether a refusal would be justified by the existence of conditions which, under the provisions of the statute, might furnish reasonable ground for refusal by the licensing officer, in the exercise of a discretion vested in him. The question constitutes the ultimate issue of fact to be determined by the trial judge ” (Matter of Small v. Moss, 277 N. Y. 501, 507).
But the record before me consists solely of the petition and the exhibits annexed. These include the order under review, issued 20 months after the last hearing afforded petitioner. It consists of a printed form letter, with the basis of denial inserted in typewriting. However, whether an independent investigation of petitioner’s present fitness safely to be entrusted with a license was made, is not shown; and it seems implicit that no new hearing was held. I cannot hold on the record, therefore, that as a matter of law the order here was lawfully predicated.
Assuming the accuracy of the allegations of the petition (Matter of Guzzetta v. Carey, 8 Misc 2d 759), it may not be held, as a matter of law, that the denial at bar, issued without further investigation almost two years after the revocation, did not violate subdivision 5 of section 71 of the Vehicle and Traffic Law and was a proper exercise of that discretionary power. Matter of Petrzala v. Fletcher (supra) is distinguishable; in that case the application denied was made less than four months after the revocation of Petrzala’s license.
Accordingly, the denial by the respondent on September 3, 1959 of the petitioner’s application must be annulled but the petition must be dismissed too. Both annulment and dismissal, however, are without prejudice — that is to say, the matter is remanded for further proceedings before the respondent not inconsistent with the opinion herein (see Matter of Lindquist v. City of Jamestown, 192 Misc. 906; cf. Matter of Edelstein v. Gale, 5 AD 2d 811).